# EXHIBIT B

Skip to Main Content  Logout  My Account  Search Menu  New Civil Search  Refine Search  Back
<span>Location : All Courts   Help</span>

# REGISTER OF ACTIONS
## CASE NO. 19-02-25404

| | | |
|---|---|---|
| CHRISTOPHER and JENNIFER CLAFFEY vs. STATE FARM LLOYDS | § § § § § | Case Type: **Accounts/Contracts/Notes**<br>Date Filed: **02/25/2019**<br>Location: **506th District Court** |

---

### PARTY INFORMATION

| | | Attorneys |
|---|---|---|
| **Defendant** | **STATE FARM LLOYDS**<br>AUSTIN, TX 78701-3218 | **Micah Kessler**<br>*Retained*<br>713-781-2889(W) |
| **Plaintiff** | **CLAFFEY, CHRISTOPHER**<br>KATY, TX 77493 | **Eric B Dick**<br>*Retained*<br>832-207-2007(W) |
| **Plaintiff** | Claffey, Jennifer<br>Houston, TX 77092 | |

---

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | |
|---|---|
| 02/25/2019 | **Original Petition (OCA)** |
| 02/25/2019 | **CIVIL CASE INFORMATION SHEET** |
| 02/25/2019 | **ISSUED CITATION**<br>*for State Farm - eserved to atty env#31463549* |
| 03/01/2019 | **Miscellaneous**<br>*certified mail receipt # provided by process server for citation issued to State Farm* |
| 04/05/2019 | **Answer**<br>*STATE FARM LLOYD'S (GENERAL DENIAL) PER ATTY M. MICAH KESSLER* |

---

### FINANCIAL INFORMATION

| | |
|---|---|
| **Plaintiff** CLAFFEY, CHRISTOPHER | |
| Total Financial Assessment | 309.00 |
| Total Payments and Credits | 309.00 |
| **Balance Due as of 04/08/2019** | **0.00** |
| | |
| 02/25/2019  Transaction Assessment | 309.00 |
| 02/25/2019  E-File Payment     Receipt # EF-04162     CLAFFEY, CHRISTOPHER | (309.00) |

Filed: 2/25/2019 12:00 AM
Liz Pirkle, District Clerk
Waller County, Texas
By: David Kehlenbeck, Deputy

CAUSE NO. 19-02-25404

| | | |
|---|---|---|
| CHRISTOPHER and JENNIFER CLAFFEY | § | IN THE DISTRICT COURT |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| **v.** | § | 506th JUDICIAL DISTRICT |
| | § | |
| STATE FARM LLOYDS | § | |
| *Defendant.* | § | WALLER COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, CHRISTOPHER and JENNIFER CLAFFEY (herein "Plaintiff"), who files this, its Original Petition and Requests for Disclosure, against STATE FARM LLOYDS (herein "Defendant") and for cause of action would respectfully show the court as follows:

### I.

### Preliminary Information and Definitions

1. Insured:               CHRISTOPHER and JENNIFER CLAFFEY (herein "Plaintiff")

   Policy Number:         55CTV7629 (herein "Policy")

   Claim Number:          53-855Q-407 (herein "Claim" or "Claim Number")

   Date of Loss:          4/17/2016 (herein "Date of Loss")

   Insured Property:      3002 LAKES OF KATY LANE, KATY, TEXAS 77493

                          (herein "Property" or "Insured Property")

   Insurer:               STATE FARM LLOYDS (herein "Defendant")

                          Defendant's Attorney for Service is:

                          CORPORATION SERVICE COMPANY

                          211 E. 7TH STREET, STE. 620, AUSTIN, TEXAS 78701-3218

## II.

### Discovery Control Plan

2.  Plaintiff intends for discovery to be conducted under Level 2 of Rule 190 of the Texas Rules of Civil
    Procedure.

## III.

### Parties

3.  Plaintiff is an individual who resides in Texas.

4.  Defendant is a Texas "Foreign" company registered to engage in the business of insurance in the
    State of Texas. This Defendant may be served with process by in person or certified mail, return
    receipt requested, by serving: (1) the president, an active vice president, secretary, or attorney in fact at
    the home office or principal place of business of the company; or (2) leaving a copy of the process at
    the home office or principal business office of the company during regular business hours.

## IV.

### Jurisdiction

5.  The court has jurisdiction over the cause of action because the amount in controversy is within the
    jurisdictional limits of the court and Plaintiff seeks only monetary relief of over $200,000 but not more
    than $1,000,000.

6.  The Court has jurisdiction over Defendant because Defendant engages in the business of insurance in
    the State of Texas and the cause of action arises out of Defendant's business activities in the State of
    Texas.

## V.

### Venue

7.  Venue is proper in WALLER County, Texas because the insured property is situated in WALLER County, Texas and/or the contract was signed in WALLER County, Texas. TEX. CIV. PRAC. & REM. CODE. § 15.032

## VI.

## Facts

8.  Plaintiff was the owner of the Policy issued by Defendant.  Plaintiff owns the insured property.

9.  Defendant sold the policy, insuring the property that is the subject of this lawsuit to Plaintiff. The Plaintiff suffered a significant loss with respect to the property at issue, and suffered additional living expenses.

10. Plaintiff submitted its claim to Defendant with a Date of Loss for damage to the dwelling and contents of the home.

11. Defendant assigned a Claim Number to Plaintiff's claim.

12. Defendant failed to properly adjust the claim and summarily improperly paid the claim with obvious knowledge and evidence of serious cosmetic and structural damage.

13. Defendant improperly paid Plaintiffs claim for replacement of the property, even though the policy provided coverage for losses such as those suffered by Plaintiff.

14. Defendant failed to perform its contractual duty to adequately compensate Plaintiff under the terms of the policy.  Defendant failed and refused to pay the full proceeds of the policy although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged property and all conditions precedent to recovery upon the policy had been carried out and accomplished by Plaintiff.

Such conduct constitutes breach of the insurance contract between Defendant and Plaintiff.

15. Defendant misrepresented to Plaintiff that the damage to the property was not in excess to the amount paid even though the damage was caused by a covered occurrence. Defendant's conduct constitutes violations of the Texas Insurance Code.

16. Defendant failed to make an attempt to settle Plaintiff's claim in a fair manner although they were aware of their liability to Plaintiff under the policy.  Defendant's conduct constitutes violations of the *Texas Unfair Competition and Unfair Practices Act.* TEX. INS. CODE § 541.060(2).

17. Defendant failed to explain to Plaintiff the reasons for its offer of an inadequate settlement. Specifically, Defendant failed to offer Plaintiff adequate compensation, without any explanations why full payment was not being made.  Furthermore, Defendant did not communicate that any future settlements or payments would be forthcoming to pay for the entire losses covered under the policies nor did it provide any explanation for the failure to adequately settle Plaintiff's claim.  Defendant's conduct constitutes violations of the *Texas Unfair Competition and Unfair Practices Act.* TEX. INS. CODE § 541.060(3).

18. Defendant failed to affirm or deny coverage of Plaintiff's claims within a reasonable time. Specifically, Plaintiff did not receive timely indication of acceptance or rejection, regarding the full and entire claims, in writing from Defendant.  Defendant's conduct constitutes violations of the *Texas Unfair Competition and Unfair Practices Act.* TEX. INS. CODE § 541 060(4).

19. Defendant refused to fully compensate Plaintiff, under the terms of the policy, even though Defendant failed to conduct a reasonable investigation.  Specifically, Defendant performed an outcome-oriented investigation of Plaintiffs claim, which resulted in a biased, unfair and inequitable evaluation of Plaintiff's losses on the property.  Defendant's conduct constitutes violations of the *Texas Unfair*

*Competition and Unfair Practices Act.* TEX. INS. CODE § 541.060(7).

20. Defendant failed to meet its obligations under the Texas Insurance Code regarding acknowledging Plaintiff's claims, beginning investigations to Plaintiff's claims and requesting all information reasonably necessary to investigate Plaintiff's claim within fifteen (15) days of receiving notice of Plaintiff's claims. Defendant's conduct constitutes violations of the *Texas Prompt Payment of* Claims *Act.* TEX. INS. CODE § 542.055.

21. Defendant failed to accept or deny Plaintiff's full and entire claims within fifteen (15) business days of receiving all required information. Defendant's conduct constitutes a violation of the *Texas Prompt Payment of Claims Act.* TEX. INS. CODE § 542.056.

22. Defendant failed to meet its obligations under the Texas Insurance Code regarding payment of claims without delay. Specifically, Defendant has delayed full payment of Plaintiffs claims longer than allowed and, to date, Plaintiff has not yet received full payment for the claims. Defendant's conduct constitutes a violation of the *Texas Prompt Payment* of *Claims Act.* TEX. INS. CODE § 542.055.

23. From and after the time Plaintiffs claims were presented to Defendant, the liability of Defendant to pay the full claims in accordance with the terms of the policy was reasonably clear. However, Defendant has refused to pay Plaintiff in full, despite there being no basis whatsoever on which a reasonable insurance company would have relied on to deny the full payment. Defendant's conduct equates to breaches of the common law duty of good faith and fair dealing.

24. As a result of Defendant's acts and omissions, Plaintiff was forced to retain the attorney who is representing Plaintiff in this cause of action.

25. Plaintiffs experience is not an isolated case. The acts and omissions Defendant committed in this case, or similar acts and omissions, occur with such frequency that they constitute a general business practice of Defendant with regard to handling these types of claims. Defendant's entire process is unfairly designed to reach favorable outcomes for the company at the expense of the policyholders.

## VII.

### Causes of Action:

26. Plaintiff incorporates Paragraphs 1 to 26 by reference.

### COUNT 1:

### Breach and Anticipatory Breach of Contract

27. Defendant 's conduct, as described in this petition, constitutes a breach of the insurance contract made between Defendant and Plaintiff.  Plaintiff anticipates that Defendant will continue in such breaches of contract.

28. Defendant's failure and refusal, as described above, to pay the adequate compensation as is obligated to do under the terms of the policy in question and under the laws of the State of Texas, constitutes material breaches of the insurance contract with Plaintiff.  Furthermore, Plaintiff has suffered damages in the form of actual damages, consequential damages and reasonable and necessary attorney's fees for such violations of the Texas Insurance Code.

29. Defendant's conduct constitutes multiple violations of the *Texas Unfair Compensation and Unfair Practices Act.* TEX. INS. CODE, Chapter 541. All violations under this article are made actionable by TEX. INS. CODE § 541.151.

30. Defendant's unfair practice, as described above, of misrepresenting to Plaintiff material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.051, § 541.060 and § 541.061.

31. Defendant's unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claims, even though Defendant's liability

under the policy was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.051, § 541.060 and § 541.061.

32. Defendant's unfair settlement practice, as described above, of failing to promptly provide Plaintiff with a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for its offer of a compromise settlement of the claims, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.051, § 541.060 and § 541.061.

33. Defendant's unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the claims Plaintiff or to submit a reservation of rights to Plaintiff constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.051, § 541.060 and § 541.061.

34. Defendant's unfair settlement practice, as described above, of refusing to pay Plaintiffs claims without conducting a reasonable investigation, constitutes an unfair method of competition an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.051, § 541.060, and § 541.061. Noncompliance with Texas Insurance Code Chapter 542: "The Prompt Payment of Claims Act"

35. Defendant's conduct constitutes multiple violations of the *Texas Prompt Payment* of *Claims Act.* TEX. INS. CODE, Chapter 542. All violations made under this article are made actionable by TEX. INS. CODE § 542.060.

36. Defendant's failure, as described above, to acknowledge receipt of Plaintiffs claims, commence investigation of the claims, and request from Plaintiff all items, statements, and forms that they reasonable believed would be required within the applicable time constraints, constitutes a

non-payment of the claims. TEX. INS. CODE § 542.055-542.060.

37. Defendant's delay of payment of Plaintiffs claims, as described above, following its receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided for constitutes a non-prompt payment of the claims. TEX. INS. CODE § 542.055-542.060.

## COUNT 2:

### Breach of the Duty of Good Faith and Fair Dealing

38. Defendant's conduct constitutes a breach of the common law duty of good faith and fair dealing owed to insured's in insurance contracts. See: *[INSERTDEFENDANT] v. Nicolau*, 951 S.W.2d 444, 1997 Tex. LEXIS 69 (Tex. 1997). Defendant insurance company acted in bad faith when it denied a claim by plaintiff insureds; in an action for property damage due to plumbing leaks the insurer was found to have hired an investigating firm biased against finding liability, failed to follow up on substantial information indicating the leaks were the cause of damage, and the court held that denial of coverage could have been pre-textual.

39. Defendant's failure, as described above, to adequately and reasonably investigate and evaluate Plaintiff's claims, although at that time Defendant knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing, as well as Defendant's canceling said Policy.

## COUNT 3:

### Deceptive Trade Practices & Unconscionable Conduct – Knowledge and Intent

40. Each of the acts described above, together and singularly, was done "knowingly" and "intentionally" and was a producing cause of Plaintiff's damages described therein by Texas Deceptive Trade Practices Act.

41. Each of the acts described above, together and singularly, constitute a violation of the Texas Deceptive Trade Practices Act pursuant to its tie-in provision for Insurance Code Violations. Accordingly, Plaintiff also brought each and every cause of action alleged above under the Texas Deceptive Trade Practices Act pursuant to its tie-in provision.

42. At all times material hereto, Plaintiff was a consumer who purchased insurance products and services from Defendant. Defendant has violated the Texas Deceptive Trade Practices Act in one or more of the following manners:

a.    Causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

b.    Representing the goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not;

c.    Advertising goods or services with intent not to sell them as advertised;

d.    Making false or misleading statements of fact concerning the reasons for, existence of, or amount of price reductions;

e.    Representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

f.    Misrepresenting the authority of a salesman, representative or agent to negotiate the final terms of a consumer transaction;

g.    Failing to disclose information concerning goods or services which was known at the time of

the transaction and such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed; and/or

h.      Engaging in an unconscionable course of conduct.

## COUNT 4:

## Violations of Texas Prompt Payment of Claims Act:

## Texas Insurance Code, Chapter 542:

## Strict Liability with No Good Faith Exception

43. Defendant's conduct, as described above, constitutes multiple violations of *Texas Prompt Payment of Claims Act.*

44. As described above, Plaintiff has a claim under an insurance policy, the insurer is liable for the claim and the insurer has failed to comply with the requirement of *Texas Prompt Payment of Claims Act.* TEX. INS. CODE § 542.051-542.061.

45. As described above, Defendant failed to perform one or more of the following duties not later than the 15th day (30th day if Defendant is a surplus lines insurer) after receipt of notice of at the claim:[1]

a.      Acknowledge the claim.  Defendant failed to acknowledge receipt of the claim, including separate claims arising from the same incident.  TEX. INS. CODE § 542.055(a)(1).  See *Dunn v. Southern Farm Bur. Cas. Ins. Co.,* 991 S.W.2d 467, 472 (Tex. App.-Tyler 1999, pet. denied);

b.      Record the acknowledgement.  Defendant failed to make a record of the date, means, and

---

[1] TEX. INS. CODE § 542.055(a)

content of the acknowledgement.  TEX. INS. CODE § 542.055(c);

c.  Commence the investigation.  Defendant failed to make commence a reasonable investigation of the claim.  TEX. INS. CODE § 542.055(a)(2); and/or

d.  Request information from the claimant.  Defendant failed to request from the Plaintiff all items, statements and forms reasonably needed from Plaintiff.  TEX. INS. CODE § 542.055(a)(3).

46. As described above, Defendant failed to perform one or more of the following duties after Defendant received all items, statements, and forms reasonable required by the Plaintiff:

a.  Accept of reject the claim.  Defendant failed to notify Plaintiff by the 15th "business day" that Defendant either accepts or rejects the claim.[23]  TEX. INS. CODE § 542.056(d);

b.  State reasons for any rejection.  Defendant failed to notify Plaintiff of any reasons for denying such claim.  TEX. INS. CODE § 542.056(c);

c.  Ask for more time and tell why it is needed.  Defendant failed to notify Plaintiff it needed more time and the reasons for seeking more time.  TEX. INS. CODE § 542.056(d);

d.  Pay the claim after accepting.  Defendant failed to pay the claim within five "business days" or twenty days if Defendant is a surplus lines insurer.  TEX. INS. CODE § 542.057(a),(c);

e.  Pay the claim after the claimant performs any condition.  If Defendant sought a condition on Plaintiff, it did not pay such claim within five "business days" or twenty days if Defendant is a surplus lines insurer after such condition was satisfied. TEX. INS. CODE § 542.057(b); and/or

---

[2] Defendant has not indicated it suspects arson thus allowing 30 days. TEX. INS. CODE § 542.056(b)
[3] Defendant has not sought a 45 day extension.  TEX. INS. CODE § 542.056(d)

f.  Pay the claim within 60 days after receipt of information.  Defendant failed to pay the claim within 60 days after receiving the items requested from Plaintiff.  TEX. INS. CODE § 542.058(a).

## COUNT 5:

## Unfair Insurance Practices:

## Texas Insurance Code, Chapter 541

47. Defendant's conduct, as described above, constitutes multiple violations of Unfair Insurance Practices.

48. Defendant engaged in one or more of the following settlement practices with respect to a claim made by Plaintiff[4]:

a.  misrepresenting to Plaintiff a material fact or policy provision relating to coverage at issue;

b.  failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim:

    i.   with respect to which the Defendant's liability has become reasonably clear; or

    ii.  a claim under one portion of the policy of the claim with respect to which the Defendant's liability has become reasonably clear in order to influence Plaintiff to settle an additional claim under another portion of the coverage, unless payment under one portion of the coverage constitutes evidence of liability under another portion of the policy;

c.  failing to provide promptly to Plaintiff a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for Defendant's denial of the claim or for the offer of a

compromise settlement of the claim;

d.  failing within a reasonable time to:

    i.  affirm or deny coverage of a claim to Plaintiff;

    ii.  submit a reservation of rights to a Plaintiff;

e.  refusing, failing, or unreasonably delaying an offer of settlement under first-party coverage on the basis that other coverage may be available or that third parties are responsible for the damages suffered, except as may be specifically provided in the policy;

f.  undertaking to enforce a full and final release of a claim from a policyholder when only a partial payment has been made, unless the payment is a compromise settlement of a doubtful or disputed claim; and/or

g.  requiring Plaintiff, as a condition of settling a claim, to produce Plaintiff's federal income tax returns for examination or investigation.

49. Defendant may have engaged in one or more of the following settlement practices with respect to a claim made by Plaintiff[5]:

a.  misrepresentations and false advertising of policy contracts;

b.  false information and advertising generally;

c.  defamation of insurers or persons engaged in the business of insurance;

---

[4] TEX. INS. CODE § 541.060
[5] TEX. INS. CODE § 541.151

d.     boycott, coercion, and intimidation in the business of insurance;

e.     false financial statements;

f.     stock operations and advisory board contracts;

g.     unfair discrimination;

h.     rebates;

i.     deceptive names, words, symbols, devises, and slogans; and/or

j.     misrepresentation of the insurance policies;

50. Defendant engaged in one or more of the following settlement practices with respect to a claim made by Plaintiff[6]:

a.     making an untrue statement of material fact;

b.     failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;

c.     making a statement in such manner as to mislead a reasonably prudent person to a false conclusion of a material fact;

d.     making a material misstatement of law; and/or

e.     failing to disclose a matter required by law to be disclosed, including failing to make disclosure in accordance with an other provision of the insurance code.

---

[6] TEX. INS. CODE § 541.061

## COUNT 6:

### Fraud

51. Defendant knowingly and with reckless disregard for the Plaintiff in the course of handling of this subject claim made false statements, misrepresented material facts, and engaged in actions and/or omissions for the purpose of misleading Plaintiff as to the actual damages resulting from the peril and Plaintiff having relied upon such fraudulent conduct, have been injured.

52. Defendant knowingly and with the reckless disregard for the Plaintiff in the course of handling of this subject claim made false statements, misrepresented material facts, and engaged in actions and/or omissions for the purpose of misleading Plaintiff as to the rights, duties, and insurance benefits in the subject contract for insurance, and Plaintiff having relied upon such fraudulent conduct, have been injured.

53. The conduct described was done intentionally and for the purpose of having Plaintiff rely on such fraudulent conduct thereby causing Plaintiff to suffer injury.

## COUNT 7:

### Ongoing Conspiracy to Commit Illegal Acts

54. Defendant was a member of a combination of two or more persons whose object was to accomplish the stated illegal acts upon Plaintiff. Defendant, by and through their agents, reached a meeting of the minds and acted in such a manner as to further the conspiracy by knowingly and with reckless disregard for the Plaintiff in the course of handling of this subject claim made false statements, misrepresented material facts, and engaged in actions and/or omissions for the purpose of misleading Plaintiff as to the actual damages resulting from the peril of said claim, and Plaintiff having relied

upon such conduct has been injured.

55. Defendant, by and through its agents, reached a meeting of the minds and acted in such a manner as to further the conspiracy to commit stated illegal acts by knowingly and with reckless disregard for the Plaintiff in the course of handling of this subject claim made false statements, misrepresented material facts, and engaged in actions and/or omissions for the purpose of misleading Plaintiff as to the rights, duties, and insurance benefits in the subject contract for insurance, and Plaintiff having relied upon such conduct has been injured.

56. The conduct described was done intentionally and for the purpose of having Plaintiff rely on such fraudulent conduct thereby causing Plaintiff to suffer injury.

## VIII.

### Damages and Prayer

57. WHEREFORE, PREMISES CONSIDERED, Plaintiff herein, complains of Defendant and prays that Defendant be cited to appear and answer and that on a final trial on the merits, Plaintiff recover from Defendant the following:

a.    Plaintiff would show that all of the aforementioned acts, taken together or singularly, constitute the proximate and or producing causes of damages sustained by Plaintiff.

b.    For breach of contract, Plaintiff is entitled to regain the benefit of his bargain, which is the amount of the policy benefits withheld, together with consequential damages and attorney's fees.

c.    For noncompliance with the *Texas Unfair Competition and Unfair Practices Act,* Plaintiff is entitled to actual damages, which includes the loss of the benefits that should have been paid

pursuant to the policy, including but not limited to direct and indirect consequential damages, mental anguish, court costs and mandatory attorney's fees. See *Rosenblatt v. Freedom Life Ins. Co. of Am.*, 240 S.W.3d 315, 2007 Tex. App. LEXIS 6177 (Tex. App.—Houston [1st Dist.] 2007, no pet.) For knowing and intentional conduct of the acts complained of, Plaintiff asks for three times economic damages and three times mental anguish damages. See TEX. INS. CODE § 541.152 and TEX. BUS. & COM. CODE § 17.50.

d.      For noncompliance with *Texas Prompt Payment of Claims Act*, which is strict liability without any good faith exceptions, Plaintiff is entitled to the amount of her claims, as well as eighteen (18) percent interest on the total amount of the claim per annum post judgment interest, as allowed by law, and for any other further relief, either at law or in equity, to which she may show here to be justly entitled. See *Am. Nat'l. Prop. & Cas. Co. Inc. v. Patty*, No. 05-00-01171-CV, 2001 Tex. App. LEXIS 5493 (Tex. App.—Dallas Aug. 15, 2001, pet. denied) (unpublished). The formula for calculating the interest penalty under this article is "I = P R T," where "I" is interest, "P" equals the principal, "R" equals the rate of interest, and "T" equals time over which interest is to be calculated. Thus, where the insurer tendered less than the face value of the policy, the penalty should have been calculated until judgment was entered against the insurer. Tender of partial payment of a claim does not reduce the penalty: the penalty is calculated based on the amount of the "claim," not the difference between the claim and any partial payment that is made. See *Republic Underwriters Ins. Co. v. Mex-Tex, Inc.*, 106 S.W.3d 174, 183-84 (Tex.App.—Amarillo 2003, pet. denied). Also See *Higginbotham v. State Farm Mut. Auto. Ins. Co.,* 103 F.3d 456, 461 (5th Cir. 1997). Violations of Tex. Ins. Code § 542 are strict liability without any exception.

e.      For breach of the common law duty of good faith and fair dwelling, actual damages, direct and

indirect consequential damages, exemplary damages and mental anguish as to be determined by the jury. See *Lee v. Safemate Life Ins. Co.*, 737 S.W.2d 84, 1987 Tex. App. LEXIS 8111 (Tex. App.—El Paso 1987, writ dism'd). Exemplary damages are recoverable for a breach of duty of good faith and fair dealing under the same principles allowing recovery of those damages in other tort actions; mental anguish damages are recoverable for a breach of duty of good faith and fair dealing under the same principles allowing recovery of those damages in other tort actions.

f.  For fraud, Plaintiff seeks damages for breach of contract. *Albin v. Isotron Corp.,* 421 S.W.2d 739, 744 (Tex. Civ. App.-Texarkana 1967, writ ref'd n.r.e). Upon a finding of actual fraud, Plaintiff seeks exemplary damages as to be determined by the jury. TEX. CIV. PRAC. & REM. § 41.003(a)(1).

g.  For ongoing civil conspiracy, Plaintiff seeks joint and several damages to which the conspirators caused Plaintiff along with exemplary damages as determined by the jury.

h.  Plaintiff seeks attorney fees at a contingent rate of forty-five percent as allowed by law. If attorney fees must be quantified at an hourly rate, Plaintiff seeks attorney fees at $450 an hour. See *Mid-Century Ins. Co. v. Barclay*, 880 S.W.2d 807, 1994 Tex. App. LEXIS 1480 (Tex. App.—Austin 1994, writ denied). Attorney's fees are awarded to a party as part of the damages owed by an insurance company that violates this chapter, and it is appropriate to require the insurer to pay a contingency fee, which may be greater than an hourly fee. The specter of large attorney's fee awards may serve as additional incentive to the insurance company to respond promptly and diligently to its insured's claims.

i.  Furthermore, the denial and/or wrongful delay to provide Plaintiff with insurance benefits by

Defendant was apparently part of a common plan, routine, scheme, and design calculated to
deny insurance benefits to policy holders. In order to punish Defendant and to set an example
and thereby prevent other policyholders from being treated in this manner, exemplary damages
should be awarded. Accordingly, Plaintiff seeks exemplary damages in an amount the jury
deems appropriate.

## IX.

## RESERVATION OF APPRAISAL RIGHTS

58. By filing this lawsuit herein, Plaintiff does not waive, and expressly reserves, its right under the policy
to demand an appraisal for determination of the actual cash value amount of loss and replacement cost
value amount of loss with respect to the property damage claims Plaintiff asserts in this lawsuit.

## X.

## AFFIRMATIVE DEFENSES

59. *Waiver.* Defendant has waived certain policy conditions, duties imposed on the Plaintiff, and terms of
coverage of the insurance policy at issue.

60. *Contra Proferuntum.* Defendant's contract is unilateral and in the event of ambiguity must be held
against the drafter.

## XI.

## JURY DEMAND

61. Plaintiff respectfully demands a trial by jury and remits such fee.

## X.

## PLAINTIFF MAKES 194 REQUESTS TO DEFENDANT

62. Pursuant to Rule 194, Defendants are requested to disclose, within 50 days of service of this request,

the information or material described in Rule 194.2.

63. In addition to the content subject to disclosure under Rule 194.2, Plaintiff requests disclosure of all documents, electronic information, and tangible items that the Defendant has in its possession, custody, or control and may use to support Defendant's claims or defenses.

Respectfully Submitted,

**DICK LAW FIRM, PLLC**

Eric B. Dick, LL.M.
TBN: 24064316
FIN: 1082959
DICK LAW FIRM, PLLC
3701 Brookwoods Drive
Houston, Texas 77092
(832) 207-2007 Office
eric@dicklawfirm.com
www.dicklawfirm.com
**ATTORNEY FOR PLAINTIFF**

## EXHIBIT "A"
## PLAINTIFF'S FIRST SET OF INTERROGATORIES

### I.
### DEFINITIONS:

1. "You" or "Your" means the party responding to these requests.

2. "The Policy" means the insurance policy that is the basis of claims made against Defendant in this lawsuit.

3. "Your Counsel" means the attorney or attorneys who are representing or have represented you either with regard to the claim or in this lawsuit.

4. The Claim" means the insurance claim made the basis of the breach of contract claim made against Defendant in this lawsuit.

5. "Written Communication" means the conveyance of information by a writing, whether by letters, e-mails, memoranda, handwritten notes and/or faxes.

6. "Document" means letters, words or numbers or their equivalent, set down by handwriting, typewriting, printing, photostating, photographing, magnetic or electronic impulse, mechanical or electronic recording, or other form of data compilation. *See* Texas Rule of Evidence 1001(a). "Document" specifically includes information that exists in electronic or magnetic form.

7. "Witness Statement" means the statement of any person with knowledge of relevant facts, regardless of when the statement was made, and is a (1) written statement signed or otherwise adopted or approved in writing by the person making it, or (2) a stenographic, mechanical, electrical, or other type of recording of a witness's oral statement, or any substantially verbatim transcript of such recording. *See* Texas Rule of Civil Procedure 192.3(h).

8. "Date" means the exact date, month and year, if ascertainable, or, if not, the best available approximation.

### II.
### INSTRUCTIONS:

1. You are requested to produce photographs, video recordings and audio recordings that were created or stored electronically.

2. Pursuant to Rule 196.4, you are requested to produce electronic or magnetic data responsive to the Requests for Production below in tiff or pdf searchable format, including email, instant message and pdf forms of the documents.

## III.
## INTERROGATORIES

1. Identify the persons involved in the investigation and handling of Plaintiff's claim for insurance benefits arising from the claim subject of this suit, and include a brief description of the involvement of each person identified, their employer, and the date(s) of such involvement.

ANSWER:

2. If you performed any investigative steps in addition to what is reflected in the claims file, please generally describe those investigative steps conducted by you or any of your representatives with respect to the facts surrounding the circumstances of the subject loss. Identify the persons involved in each step.

ANSWER:

3. Identify by date, author, and result the reports generated as a result of your investigation.

ANSWER:

4. State the following concerning notice of claim and timing of payment:
   a. The date and manner in which you received notice of the claim
   b. The date and manner in which you acknowledged receipt of the claim
   c. The date and manner in which you commenced investigation of the claim
   d. The date and manner in which you requested from the claimant all items, statements, and forms that you reasonably believed, at the time, would be required from the claimant
   e. The date and manner in which you notified the claimant in writing of the acceptance or rejection of the claim

ANSWER:

5. Identify by date, amount and reason, the insurance payments made by you to the Plaintiff.

ANSWER:

6. Has Plaintiff's claim for insurance benefits been rejected or denied? If so, state the reasons for denying the claim.

ANSWER:

7. Do you contend that appraisal is improper in this matter?

ANSWER:

8. Do you contend that the Plaintiff has properly invoked appraisal?

9. Do you contend that Defendant should not communicate to any umpire *ex parte*?

ANSWER:

10. What relationship do you have, if any, with any umpire that you or your appraiser has suggested?

ANSWER:

11. What relationship do you have, if any, of the umpire selected or appointed in this appraisal?

## EXHIBIT "B"
## PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION

### I.
### DEFINITIONS:

1. "You" or "Your" means the party responding to these requests.

2. "The Policy" means the insurance policy that is the basis of claims made against Defendant in this lawsuit.

3. "Your Counsel" means the attorney or attorneys who are representing or have represented you either with regard to the claim or in this lawsuit.

4. The Claim" means the insurance claim made the basis of the breach of contract claim made against Defendant in this lawsuit.

5. "Written Communication" means the conveyance of information by a writing, whether by letters, e-mails, memoranda, handwritten notes and/or faxes.

6. "Document" means letters, words or numbers or their equivalent, set down by handwriting, typewriting, printing, photostating, photographing, magnetic or electronic impulse, mechanical or electronic recording, or other form of data compilation. *See* Texas Rule of Evidence 1001(a). "Document" specifically includes information that exists in electronic or magnetic form.

7. "Witness Statement" means the statement of any person with knowledge of relevant facts, regardless of when the statement was made, and is a (1) written statement signed or otherwise adopted or approved in writing by the person making it, or (2) a stenographic, mechanical, electrical, or other type of recording of a witness's oral statement, or any substantially verbatim transcript of such recording. *See* Texas Rule of Civil Procedure 192.3(h).

8. "Date" means the exact date, month and year, if ascertainable, or, if not, the best available approximation.

### II.
### INSTRUCTIONS:

1. You are requested to produce photographs, video recordings and audio recordings that were created or stored electronically.

2. Pursuant to Rule 196.4, you are requested to produce electronic or magnetic data responsive to the Requests for Production below in tiff or pdf searchable format, including email, instant message and pdf forms of the documents.

## PRODUCTION PROTOCOL RELATING TO
## ELECTRONICALLY STORED INFORMATION
## (ESI ATTENDANT TO DISCOVERY REQUESTS TO DEFENDANT)

1. "Information items" as used herein encompasses individual documents and records (including associated metadata) whether on paper or film, as discrete "files" stored electronically, optically, or magnetically or as a record within a database, archive, or container file. The term should be read broadly to include e-mails, messaging, word processed documents, digital presentations, and spreadsheets.

2. Consistent with Texas Rule of Civil Procedure 196.4, responsive electronically stored information (ESI) has been requested by Plaintiff in its native form; that is, in the form in which the information was customarily created, used, and stored by the native application employed by the producing party in the ordinary course of business. The producing party shall not produce in a format not requested and later assert that production as a basis of not producing in the requested format, except upon agreement by the parties prior to production or ordered by the Court. The parties are reminded of their obligation to confer and to make reasonable efforts to resolve disputes regarding production without court intervention. *See In re Weekly Homes, L.P.,* 295 S.W.3d 309 (Tex.2009); TEX. R. CIV. P. 192.4(b).

3. If it is infeasible or unduly burdensome to produce an item of responsive ESI in its native form, it may be produced in an agreed-upon near-native form; that is, in a form in which the item can be imported into the native application without a material loss of content, structure, or functionality as compared to the native form. Static image production formats serve as near-alternatives only for information items that are natively static images (i.e., photographs and scans). Any and all agreements between the parties on a non-native form of production shall occur prior to initial production and the agreements shall be in writing. If no agreement can be made between the parties, consistent with Texas Rule of Civil Procedure 196.4, Defendant(s) will object and file with the Court evidence that production in native or near-native form is unduly burdensome or requires extraordinary steps. In the event the Court determines that production in native or near-native format is infeasible, production shall be made in accordance with the instruction of this Protocol.

4. The table below supplies examples or agreed-upon native or near-native forms in which specific types of ESI should be produced:

| Source ESI | Native or Near Native Form or Forms Sought |
|---|---|
| Microsoft Word documents | .DOC, .DOCX |
| Microsoft Excel Spreadsheets | .XLS, .XLSX |
| Microsoft PowerPoint Presentations | .PPT, .PPTX |
| Microsoft Access Databases | .MDB, .ACCDB |
| WordPerfect Documents | .WPD |
| Adobe Acrobat Documents | .PDF |

| Photographs | .JPG, .PDF |
| --- | --- |
| E-mail | Messages should be produced in a form or forms that readily support import into standard e-mail client programs; that is, the form of production should adhere to |
| | the conventions set out in RFC 5322 (the internet e-mail standard). For Microsoft Exchange or Outlook messaging, .PST format will suffice. Single message production formats like .MSG or .EML may be furnished, if source foldering data is preserved and produced. For Lotus Notes mail, furnish .NSF files or convert to .PST. If your workflow requires that attachments be extracted and produced separately from transmitting messages, attachments should be produced in their native forms with parent/child relationships to the |
| | message and container(s) preserved and produced in a delimited text file. |

5. Absent the showing of need, a party shall only produce reports from databases that can be generated in the ordinary course of business (i.e., without specialized programming skills), and these shall be produced in a delimited electronic format preserving field and record structures and names. The parties will meet and confer prior to initial production regarding programming database productions as necessary.

6. Information items that are paper documents or that require redaction shall be produced in static image formats, e.g., single-page .TIF or multipage .PDF images. If an information item contains color, the producing party shall not produce the item in a form that does not display color. The full content of each document will be extracted by optical character recognition (OCR) or other suitable method to a searchable text file produced with the corresponding page image(s) or embedded within the image file.

7. Parties shall take reasonable steps to ensure that text extraction methods produce usable, accurate, and complete searchable text.

8. Individual information items requiring redaction shall (as feasible) be redacted natively or produced in .PDF format and redacted using the Adobe Acrobat redaction feature. Redactions shall not be accomplished in a manner that serves to downgrade the ability to electronically search the unredacted portions of the item. To the extent a producing party asserts that production in .PDF format and redaction using the Adobe Acrobat redaction feature is unfeasible, the parties are directed to confer in an attempt to resolve any dispute without Court intervention. If the dispute cannot be resolved between the parties, the manner of production can be brought before the Court consistent with TEX. R. CIV. P. 196.4.

9. Upon a showing of need, a producing party shall make a reasonable effort to locate and produce the native counterpart(s) of any .PDF or .TIF document produced. The parties agree to meet and confer prior to initial production regarding production of any such documents. This provision shall not serve to require a producing party to reveal redacted content.

10. Except as set out in this Protocol, a party need not produce identical information items in more than one form and shall globally de-duplicate identical items across custodians using each document's unique MD5 hash value. The content, metadata, and utility of an information item shall all be considered in determining whether information items are identical, and items reflecting different information shall not be deemed identical.

11. Production should be made using appropriate electronic media of the producing party's choosing provided that the production media chosen not impose undue burden or expense upon a recipient. All productions should be encrypted for transmission to the receiving party. The producing party shall, contemporaneously with production, supply decryption credentials and passwords to the receiving party for all items produced in an encrypted or password-protected form.

12. Each information item produced shall be identified by naming the item to correspond to a Bates identifier according to the following protocol:

   - The first four (4) characters of the filename will reflect a unique alphanumeric designation identifying the party making the production

   - The next nine (9) characters will be a unique, consecutive numeric value assigned to the time by the producing party. This value shall be padded with leading zeros as needed to preserve its length

   - The final five (5) characters are reserved to a sequence beginning with an underscore(_) followed by a four digit number reflecting pagination of the item when printed to a paper or converted to an image format for use in proceedings or when attached as exhibits to pleadings.

   - By way of example, a Microsoft Word document produced by Joe Johnson in its native form might be named: JJSN000000123.docx. Were the document printed out for use in deposition, page six of the printed item must be embossed with the unique identifier JJSN000000123_0006.

13. Information items designated Confidential may, at the Producing Party's option:

   - Be separately produced on electronic production media prominently labeled confidential to comply with a Protective Order, if applicable.

   - When any item so designated is converted to a printed format for any reason or

imaged format for use in any submission or proceeding, the printout or page image shall bear be labeled confidential on each page in a clear and conspicuous manner, but not so as to obscure content.

14. Producing party shall furnish a delimited load file supplying the metadata field values listed below for each information item produced (to the extent the values exist and as applicable)

**FIELD**

BeginBates

EndBates

BeginAttach

EndAttach

Custodian/Source

Source File Name

Source File Path

From/Author

To

CC

BCC

Date Sent

Time Sent

Subject/Title

Last Modified Date

Last Modified Time

Document Type

Redacted Flag (yes/no)

Hidden Content/Embedded Objects Flag (yes/no)

Confidential flag (yes/no)

MD5Hash value

Hash De-Duplicated Instances (by full path)

15. Each production should include a cross-reference load file that correlates the various files, images, metadata field values and searchable text produced.

16. Parties shall respond to each request for production by listing the Bates numbers/ranges or responsive documents produced, and where an information item responsive to these discovery requests has been withheld or redacted on a claim that it is privileged, the producing party shall furnish a privilege log in accordance with Texas Rule of Civil Procedure 193.3.

## III.
## REQUEST FOR PRODUCTION OF DOCUMENTS

1. The claim files from the home, regional, local offices, and third party adjusters/adjusting firms regarding the claim that is the subject of this matter, including copies of the file jackets, "field" files and notes, and drafts of documents contained in the file.

RESPONSE:

2. If you seek to recover attorney's fees in this lawsuit, please produce your attorney fee agreement, your attorney fee statements and invoices, any time-keeping records kept by you or your attorney, and your checks for payment of attorney's fees or expenses.

RESPONSE:

3. The underwriting files referring or relating in any way to the policy at issue in this action, including the file folders in which the underwriting documents are kept and drafts of all documents in the file.

RESPONSE:

4. A certified copy of the insurance policy pertaining to the claims involved in this suit.

RESPONSE:

5. For the last two years, your written procedures or policies (including document(s) maintained in electronic form) that pertain to the handling of claims in Texas.

RESPONSE:

6. Contracts between you and the appraiser hired by you in this matter.

RESPONSE:

7. The emails, instant messages, and internal correspondence pertaining to Plaintiff's underlying claim.

RESPONSE:

8. The Plaintiff's file from the office of their insurance agent.

RESPONSE:

9. The documents reflecting reserves applied to the subject claim.

RESPONSE:

10. For the past three years, the portions of the personnel file of the adjuster(s) involved in handling Plaintiff's claim that pertain to disciplinary actions associated with claims handling, and performance under a bonus or incentive plan.

RESPONSE:

11. For the last three years, the managerial bonus or incentive plan for managers responsible for claims.

RESPONSE:

12. The Complaint Log required to be kept by you for complaints in Texas filed over the past three years.

RESPONSE:

13. As relating to this underlying lawsuit, produce the responses, including all documents you have received, to all requests you have made for Deposition by Written Questions.

RESPONSE:

14. If you are requesting Plaintiff pay for your costs and/or expenses incurred as a result of this litigation, produce all invoices, statements, payment vouchers, payment records, checks, and proof of payment of all costs and/or expenses that you are claiming Plaintiff should be responsible for.

RESPONSE:

15. Your preferred umpire list.

RESPONSE:

## EXHIBIT "C"
## PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION

### I.
### DEFINITIONS:

1. "You" or "Your" means the party responding to these requests.

2. "The Policy" means the insurance policy that is the basis of claims made against DEFENDANT in this lawsuit.

3. "Insured Location" means the real property at the location described in the Policy declarations.

4. "Dwelling" means the dwelling located at the Insured Location at the time of the claim subject of this suit.

5. "Other Structures" means any structures located at the Insured Location during the claim subject of this suit that are set apart from the Dwelling by a clear space, including those connected only by a fence, utility line, or similar connection.

6. "Other Damages" means debris removal, temporary repairs, tree and shrub removal, personal property removal and storage, loss of use and additional living expenses.

7. "Personal Property" means any or all of the personal property and business personal property that is the subject of the claims made against DEFENDANT in this lawsuit.

8. "Your Counsel" means the attorney or attorneys who are representing or have represented you either with regard to the claim or in this lawsuit.

9. "The Claim" means the insurance claim made the basis of the breach of contract claim made against DEFENDANT in this lawsuit.

10. "Written Communication" means the conveyance of information by a writing, whether by letters, e-mails, memoranda, handwritten notes and/or faxes.

11. "Document" means letters, words or numbers or their equivalent, set down by handwriting, typewriting, printing, photostating, photographing, magnetic or electronic impulse, mechanical or electronic recording, or other form of data compilation. *See* Texas Rule of Evidence 1001(a). "Document" specifically includes information that exists in electronic or magnetic form.

12. "Witness Statement" means the statement of any person with knowledge of relevant facts, regardless of when the statement was made, and is a (1) written statement signed or otherwise adopted or approved in writing by the person making it, or (2) a stenographic, mechanical, electrical, or other type of recording of a witness's oral statement, or any substantially verbatim transcript of such recording. *See* Texas Rule of Civil Procedure 192.3(h).

13. "Date" means the exact date, month and year, if ascertainable, or, if not, the best available approximation.

## II.
## INSTRUCTIONS:

PLAINTIFF serves these requests for admissions on DEFENDANT, as allowed by Texas Rule of Civil Procedure 198.

## III.
## REQUESTS FOR ADMISSION

1.    PLAINTIFF has invoked the appraisal.

ANSWER:

2.    DEFENDANT has a preferred list of umpires.

ANSWER:

3.    PLAINTIFF has not waived its rights to appraisal.

ANSWER:

4.    DEFENDANT has refused to participate in appraisal.

ANSWER:

5.    PLAINTIFF has demanded appraisal prior to filing this lawsuit.

ANSWER:

6.    The insurance policy at issue has an appraisal provision.

ANSWER:

7.    DEFENDANT is not seeking for PLAINTIFF to pay for DEFENDANT'S attorney fees.

ANSWER:

8.    DEFENDANT is not seeking for PLAINTIFF to pay for DEFENDANT'S costs associated with this lawsuit.

ANSWER:

**EXHIBIT "D"**
**PLAINTIFF'S SECOND AMENDED DESIGNATION OF EXPERT WITNESSES**

NOW COMES, Plaintiff who files this, it's Amended Designation of Expert Witnesses, and designates the following expert witnesses, one or more of whom may testify at trial:

**I.**

Plaintiff may call the following experts who are not retained:

1. Richard Gadrow
   30719 Meadow Edge Drive
   Magnolia, Texas 77354
   *General Contractor/Estimator*

The above-named witnesses may be called to testify as property experts with regard to the nature, existence of damage, loss cause (ie: hail, storm, etc), and value of Plaintiff's property and similar property.  He may also offer testimony concerning the estimates and reports prepared by individuals utilized by Plaintiff in connection with their claim.

Said expert will base opinions on his respective training, education, experience, and review of the reports, estimates, and data, and other documents previously produced or to be produced in this case and each respective inspection of said property.  His estimates will be supplemented and are incorporated by reference.

He is an estimator who is expected to testify regarding his investigation and handling of Plaintiff's claim, including the cause, origin, scope of damage and costs of repair. He will testify that he properly identified and estimated the scope and amount of damage made the basis of Plaintiff's claim subject to this lawsuit.

His opinions are within his claim report, deposition, estimate and claim correspondence – if any. His mental impressions and opinions are based on his training, experience, inspection and personal knowledge of his investigation and handling of the claim.

His is expected to opine the following: (1) the insured location sustained covered wind and/or hail damage during the effective policy period and the proper scope of repairs to address the aforementioned damages is reflected in the estimate previously produced or to be produced ; (2) evidence of covered damages warranting replacement of the estimated damages was obvious and reasonably clear during his site inspection and an insurance carrier adjusting this claim reasonably and in good faith either knew or should have known to identify and accept coverage for the aforementioned reasonably clear damages; (3) to the extend Defendant failed to acknowledge and accept coverage for the aforementioned reasonably clear damage, Defendant adjusted this claim in bad faith; (4) Defendant did not fully indemnify the insured for his/her loss and he/she has not been paid to restore the insured's property back to pre-loss condition; and (5) the insured was underpaid for this claim and Defendant knew or should have known that its claim decision constituted an unfair denial because evidence of covered damages warranting further coverage at all times was reasonably clear during its claim investigation.

Plaintiff will supplement documents for a complete statement of this experts findings and

opinions, the investigation he performed herein, and the facts and data considered by him in forming those findings and opinions.

His report and resume will be supplemented if not attached.

Additional information he used in making any opinions, if any, will be supplemented if not attached.

2. Eric Ramirez
   1110 Nasa Parkway, Suite 545G
   Houston, Texas 77058
   *Appraiser*

The above-named witnesses may be called to testify as property experts with regard to the nature, existence of damage, loss cause (ie: hail, storm, etc), and value of Plaintiff's property and similar property.  He may also offer testimony concerning the estimates and reports prepared by individuals utilized by Plaintiff in connection with their claim.

Said expert will base opinions on his respective training, education, experience, and review of the reports, estimates, and data, and other documents previously produced or to be produced in this case and each respective inspection of said property.  His estimates will be supplemented and are incorporated by reference.

He is an appraiser who is expected to testify regarding his investigation and handling of Plaintiff's claim, including the cause, origin, scope of damage and costs of repair. He will testify that he properly identified and estimated the scope and amount of damage made the basis of Plaintiff's claim subject to this lawsuit.

His opinions are within his claim report, deposition, estimate and claim correspondence – if any. His mental impressions and opinions are based on his training, experience, inspection and personal knowledge of his investigation and handling of the claim.

He may opine the following: (1) the insured location sustained covered wind and/or hail damage during the effective policy period and the proper scope of repairs to address the aforementioned damages is reflected in the estimate previously produced or to be produced ; (2) evidence of covered damages warranting replacement of the estimated damages was obvious and reasonably clear during his site inspection and an insurance carrier adjusting this claim reasonably and in good faith either knew or should have known to identify and accept coverage for the aforementioned reasonably clear damages; (3) to the extend Defendant failed to acknowledge and accept coverage for the aforementioned reasonably clear damage, Defendant adjusted this claim in bad faith; (4) Defendant did not fully indemnify the insured for his/her loss and he/she has not been paid to restore the insured's property back to pre-loss condition; and (5) the insured was underpaid for this claim and Defendant knew or should have known that its claim decision constituted an unfair denial because evidence of covered damages warranting further coverage at all times was reasonably clear during its claim investigation.

Plaintiff will supplement documents for a complete statement of this expert's findings and opinions, the investigation he performed herein, and the facts and data considered by him in

forming those findings and opinions.

His report and resume will be supplemented if not attached.

Additional information he used in making any opinions, if any, will be supplemented if not attached.

3. Mark Earle
   526 Kingwood Drive, Suite 196
   Kingwood, Texas 77339
   *Umpire*

The above-named witnesses may be called to testify as property experts with regard to the nature, existence of damage, loss cause (ie: hail, storm, etc), and value of Plaintiff's property and similar property. He may also offer testimony concerning the estimates and reports prepared by individuals utilized by Plaintiff in connection with their claim.

Said expert will base opinions on his respective training, education, experience, and review of the reports, estimates, and data, and other documents previously produced or to be produced in this case and each respective inspection of said property. His estimates will be supplemented and are incorporated by reference.

He is an umpire who is expected to testify regarding his investigation and handling of Plaintiff's claim, including the cause, origin, scope of damage and costs of repair. He will testify that he properly identified and estimated the scope and amount of damage made the basis of Plaintiff's claim subject to this lawsuit.

His opinions are within his claim report, deposition, estimate and claim correspondence – if any. His mental impressions and opinions are based on his training, experience, inspection and personal knowledge of his investigation and handling of the claim.

He may opine the following: (1) the insured location sustained covered wind and/or hail damage during the effective policy period and the proper scope of repairs to address the aforementioned damages is reflected in the estimate previously produced or to be produced ; (2) evidence of covered damages warranting replacement of the estimated damages was obvious and reasonably clear during his site inspection and an insurance carrier adjusting this claim reasonably and in good faith either knew or should have known to identify and accept coverage for the aforementioned reasonably clear damages; (3) to the extend Defendant failed to acknowledge and accept coverage for the aforementioned reasonably clear damage, Defendant adjusted this claim in bad faith; (4) Defendant did not fully indemnify the insured for his/her loss and he/she has not been paid to restore the insured's property back to pre-loss condition; and (5) the insured was underpaid for this claim and Defendant knew or should have known that its claim decision constituted an unfair denial because evidence of covered damages warranting further coverage at all times was reasonably clear during its claim investigation.

Plaintiff will supplement documents for a complete statement of this experts findings and opinions, the investigation he performed herein, and the facts and data considered by him in forming those findings and opinions.

His report and resume will be supplemented if not attached.

Additional information he used in making any opinions, if any, will be supplemented if not attached.

Plaintiff may supplement with any additional data.

Plaintiff may call the following experts who are retained:

4.   Eric Dick, LL.M.
     Rogelio Garcia (of Counsel)
     Chris Carmona (of Counsel)
     Dick Law Firm, PLLC
     3701 Brookwoods Dr.
     Houston, Texas 77092
     (832) 207-2007
     (713) 893-6931 Fax
     www.dicklawfirm.com

The above attorneys may be called by plaintiff to testify as an expert witness at the trial of this action, pursuant to Rule 702, Tex. R. Evid., on topics of reasonable and necessary attorney's fees incurred or recoverable by any party to this lawsuit. Such expert is familiar with the average and reasonable attorney fees usually and customarily charged by attorneys in various Texas Counties for the handling of similar claims. The expert identified are aware of the various necessary efforts expended in prosecuting this suit on behalf of plaintiff, and the reasonable charges therefore, and are expected to testify that the attorney's fees incurred by plaintiff in its pursuit of this matter are reasonable and necessary, and that the attorney's fees incurred by defendant may not be reasonable or necessary.

Information regarding Eric Dick:

College:          Thomas M. Cooley
Degree:           Juris Doctorate
Distinctions:     Cum Laude
College:          University of Alabama
Degree:           Masters of Laws and Letters

Notable information:  Interned for Michigan's Attorney General in the Tobacco and Special Litigation Division and worked on the Master Settlement Agreement which is the largest civil settlement in United States history. Named by Super Lawyers as a Rising Star.

Mr Dick's report and resume, if not attached, will be provided to Defendant and are incorporated by reference.

The mental impressions and opinions are that fees and costs associated with this litigation are reasonable, necessary and customary in this county and surrounding counties. A reasonable fee to be charged in this case is $450.00 per hour in consideration with several factors, including:

- The nature and complexity of the case;
- The nature of the services provided by counsel;
- The time required for trial;
- The amount of money involved;
- The client's interest that is at stake;
- The responsibility imposed on counsel;
- The skill and expertise involved; and
- Those matters enumerated in State Bar Rule 1.04(b) (1)-(8), which are:
    - The time and labor required, the novelty and difficulty of the questions presented and the skill required to perform the legal services properly;
    - The likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer;
    - The fee customarily charged in the locality for similar legal services;
    - The amount involved and the results obtained;
    - The time limitations imposed by the client or the circumstances;
    - The nature and length of the professional relationship with the client;
- The experience, reputation and ability of the lawyer or lawyers performing the service.

Plaintiff may call the following expert who is not retained:

5. Robert C. White
   5401 S. FM 1626, Ste 170
   Kyle, Texas 78640
   *Meteorologist / Sr. Forensic Weather Analyst*
   www.weatherguidance.com
   (512) 504-3151 x 5

The above-named witnesses may be called to testify as weather events with regard to the nature, existence of wind and hail at the insured property Said expert will base opinions on their respective training, education, experience, and review of the reports, and data, and other documents previously produced or to be produced in this case.  His reports, if not attached, with be produced and are incorporated by reference.

Robert C. White is a meteorologist who is expected to testify that hail or high winds occurred at the insured location during the policy period.

Robert C. White's opinions are within his claim report, deposition, estimate and claim correspondence – if any. His mental impressions and opinions are based on his training, experience, inspection and personal knowledge of his investigation and handling of the claim.

Plaintiff will supplement documents, if not attached, for a complete statement of Robert C. White's findings and opinions, the investigation he performed herein, and the facts and data considered by him in forming those findings and opinions.

**II.**

Plaintiff reserves the right to supplement this designation further within the time limitations imposed by the Court and/or by any alterations of same by subsequent Court order and/or by agreement of the parties and/or pursuant to the Texas Rules of Civil Procedure and/or the Texas Rules of Evidence.

## III.

Plaintiff reserves the right to withdraw the designation of any expert witness and to aver positively that such previously designated expert will not be called as an expert witness at trial and to re-designate same as a consulting expert, who cannot be called by opposing counsel.

## IV.

Plaintiff reserves the right to elicit by cross-examination the opinion testimony of experts designated and called by other parties to this suit.

## V.

Plaintiff reserves the right to call undesignated expert witnesses for rebuttal or impeachment, whose identities and testimony cannot reasonably be foreseen until Defendants have named their experts or presented its evidence at trial.

## VI.

Plaintiff reserves the right to elicit any expert testimony and/or lay opinion testimony that would assist the jury in determining material issues of fact and that would not violate the Texas Rules of Civil Procedure and/or the Texas Rules of Evidence.

## VII.

Plaintiff hereby designates and may call to testify as adverse witnesses any and all witnesses designated by Defendants hereto and any and all expert witnesses designated by any party, whether or not such person or entity is still a party hereto at the time of trial.

## VIII.

Plaintiff reserves all additional rights he may have with regard to expert witnesses and testimony under the Texas Rules of Civil Procedure, the Texas Rules of Evidence, statutes, case law, any orders issued by this Court or leave granted therefrom.

Respectfully Submitted,

Eric B. Dick, LL.M.
TBN: 24064316

FIN: 1082959
DICK LAW FIRM, PLLC
3701 Brookwoods Drive
Houston, Texas 77092
(832) 207-2007 Office
www.dicklawfirm.com
eric@dicklawfirm.com
**ATTORNEY FOR PLAINTIFF**

### Certificate of Service

I certify that a true copy of the above was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure on February 19, 2019.

**Eric B. Dick**

# CITATION
19-02-25404



**CLERK OF THE COURT**
Liz Pirkle
836 Austin Street, Room #318

Hempstead, Texas 77445

**ATTORNEY(S) FOR PLAINTIFF OR PLAINTIFFS**
Eric B Dick
3701 Brookwoods Drive
Houston TX 77092
832-207-2007

## THE STATE OF TEXAS

**NOTICE TO DEFENDANT:** "You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you."

TO: STATE FARM LLOYDS by or through CORPORATION SERVICE COMPANY - 211 E 7TH STREET SUITE 620 AUSTIN TX 78701-3218, Defendant, Greeting:

You are hereby commanded to appear by filing a written answer to the Plaintiff's Original Petition at or before ten o'clock A.M. of the Monday next after the expiration of twenty days after the date of service of this citation before the Honorable Liz Pirkle, District Clerk of Waller County, Texas at the Courthouse of said County in Hempstead, Texas. Said Petition was filed this 25th day of February, 2019, in this case, **number 19-02-25404** on the docket of said court, and styled,

### CHRISTOPHER and JENNIFER CLAFFEY vs. STATE FARM LLOYDS

The nature of Plaintiff's demand is fully shown by a true and correct copy of Plaintiff's Original Petition accompanying this citation and made a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

Issued and given under my hand and seal of said Court at Hempstead, Texas, on 25th day of February, 2019.

LIZ PIRKLE, Clerk
District Court, Waller County, Texas
By: _David Kehlenbeck_
David Kehlenbeck, Deputy

## SHERIFF'S RETURN

CAME TO HAND the _____ day of _____, at _____ o'clock ____.M. and executed by delivering to each of the within-named defendant's, in person, a true copy of this Citation, having first endorsed thereon the date of delivery, together with the accompanying true and correct copy of the Plaintiff's Petition, at the following times and places, to-wit:

| NAME | DATE | TIME | PLACE |
|------|------|------|-------|
| | | | |

And not executed at to the defendant, _____
The diligence used in finding said defendant, being _____
And the cause of failure to execute this process is: _____
And the information received at to the whereabouts of the said defendant, being _____
FEES-Serving_____ cop___ $_____ _____ Sheriff
Total_____ $_____ _____ County, Texas

By:_____

Filed: 4/5/2019 1:11 PM
Liz Pirkle, District Clerk
Waller County, Texas
By: Janie Derrick, Deputy

## CAUSE NO. 19-02-25404

| | | |
|---|---|---|
| **CHRISTOPHER and** | § | **IN THE DISTRICT COURT** |
| **JENNIFER CLAFFEY** | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **WALLER COUNTY, TEXAS** |
| | § | |
| **STATE FARM LLOYDS,** | § | |
| *Defendant.* | § | **506TH JUDICIAL DISTRICT** |

## DEFENDANT'S ORIGINAL ANSWER

Defendant State Farm Lloyds files this Original Answer, Defenses, and Special Exceptions to Plaintiffs' Original Petition.

## I.
## GENERAL DENIAL

1.       Defendant generally denies all material allegations contained in Plaintiffs' Original Petition, and any amendment thereto, and demands strict proof thereof as allowed under the laws of the State of Texas. By this general denial, Defendant requires Plaintiffs to prove every fact to support the claims in Plaintiffs' Original Petition, and any amendment thereto, by a preponderance of the evidence.

## II.
## DEFENSES

2.       **Policy Coverage Provisions.** Under the Insuring Agreement, Plaintiffs bear the burden to prove the actual cash value of damage resulting from an occurrence of accidental direct physical loss to the insured property during the policy period. Plaintiffs lack proof of damages resulted from any accidental direct physical loss during the policy period beyond those damages already paid by State Farm under the Policy.

3.     **Estoppel**. Plaintiffs' breach of contract claim is barred, in whole or in part, by State Farm's timely issued payment of that portion of the appraisal award that could have been covered under the policy at issue. Specifically, Plaintiffs are estopped from contesting whether State Farm complied with the insurance contract and estopped from contesting actual damages under the insurance contract with respect to that portion of the appraisal award State Farm has paid.

4.     **Payment of Award Bars Extra-Contractual Claims.** Because the amount of loss has been determined by appraisal and because the portion of the total loss that could potentially have been covered under the policy has been timely paid, Plaintiffs have not sustained any damages that could allow them to maintain any extra-contractual cause of action. Specifically, Plaintiffs are not entitled to receive any additional policy benefits, Plaintiffs have not lost a contractual right to any additional policy benefits, and Plaintiffs have not alleged any facts that would give rise to an independent injury claim. Further, liability under Texas Insurance Code Chapter 541 incorporates the common law bad faith standard for breach of duty of good faith and fair dealing.

5.     **Timely Investigation and Payment.** Plaintiffs' claims under Chapter 542 of the Texas Insurance Code are barred as a matter of law by State Farm's timely investigation and settlement of Plaintiffs' claim after Plaintiffs submitted the claim on or about April 19, 2016, and by State Farm's issuance of payment of that portion of the appraisal award that could possibly have been covered under the policy at issue on October 2, 2017. There is no Chapter 542 violation when an insurer submits to the delay inherent in the contractual appraisal process and pays the appraisal award.

6. **Failure to Repair the Property as a Condition and Prerequisite to Recovering Replacement Cost Value.** Plaintiffs have failed to satisfy the policy's requirement and condition that repairs be made, and that evidence of repairs be presented, to State Farm in order to recover replacement cost benefits as reflected in the following loss settlement terms in Plaintiffs' State Farm Policy:

**FE-3533 HOMEOWNERS POLICY ENDORSEMENT (Texas)**

**SECTION I - LOSS SETTLEMENT**

**COVERAGE A-DWELLING**

Items 1. and 2. are replaced by the following:

1. **A1** - **Replacement Cost Loss Settlement - Similar Construction.**

   a. We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I - COVERAGES, COVERAGE A - DWELLING,** except for wood fences, subject to the following:

      (1) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations,** not to exceed the cost to repair or replace the damaged part of the property;

      (2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations,** whichever is less;

      (3) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; and

      (4) we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of **a** building or other structure, except as provided under **Option OL - Building Ordinance or Law Coverage.**

Plaintiffs are not entitled to recover replacement costs, nor are they entitled to damages on a replacement cost basis because they failed to complete the allegedly necessary

3

repairs, failed to make repairs within the appropriate time and failed to present evidence of all such repairs as required under the loss settlement provisions of the Policy.

7.    **Limit of Liability.** State Farm's liability, if any, is limited to the amount of the policy limits under the subject policy, pursuant to the "Limit of Liability" and other clauses contained in the policy sued upon.

8.    **Deductible/Offset.** Defendant is entitled to an offset or credit against Plaintiffs' damages, if any, in the amount of Plaintiffs' $18,000.00 deductible as well as an additional offset or credit in the amount of State Farm's prior payments to Plaintiffs in the amount of $34,708.34.

9.    **Wear and Tear, Deterioration, Defective Design.** Plaintiffs' claims are barred, in whole or in part, because the damages and losses alleged in Plaintiffs' Original Petition, none being admitted, were proximately caused in whole or in part by wear and tear, deterioration, and defective design. The policy at issue provides that these conditions do not fall under the coverage of the policy:

### SECTION I – LOSSES NOT INSURED

1.  We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:
    * * * * *

    g.  wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown . . .
    * * * * *

3.  We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:
    * * * * *

    b.  defect, weakness, inadequacy, fault or unsoundness in:

4

(1) planning, zoning, development, surveying, siting;

(2) design, specifications, workmanship, construction, grading, compaction;

(3) materials used in construction or repair; or

(4) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises** . . .

The damages Plaintiffs are claiming to their dwelling roof and exterior stucco, and to a basketball court above the garage were due to defective design and construction, wear and tear, and deterioration. These conditions are not insured under the policy at issue.

10.   **Rot or Fungus.**   Plaintiffs' claims are barred, in whole or in part, because the damages and losses alleged in Plaintiffs' Original Petition, none being admitted, were proximately caused in whole or in part by rot or fungus. The policy at issue specifically provides:

## SECTION I – LOSSES NOT INSURED

1.   We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

* * * * *

i.   Mold, fungus or wet or dry rot;

* * * * *

**FUNGUS (INCLUDING MOLD EXCLUSION ENDORSMENT)**

**DEFINITIONS**

The following definition is added:

"**fungus**" means any type or form of **fungus**, including mold, mildew, mycotoxins, spores, scents or byproducts produced or released by fungi.

**SECTION I – LOSSES INSURED**

Item 12.d. is replaced with the following:

d.   caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, or wet or dry rot.

Item 13.b. is replaced with the following:

b.  caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, or wet or dry rot.

**SECTION I – LOSSES NOT INSURED**

Item 1.i is replaced with the following:

i.   wet or dry rot;

In item 2., the following is added as item g.:

g.  **Fungus**. We also do not cover:

(1) any loss of use or delay in rebuilding, repairing or replacing covered property, including any associated cost or expense, due to interference at the **residence premises** or location of the rebuilding, repair or replacement, by **fungus**;

(2) any remediation of **fungus**, including the cost to:

(a) remove the **fungus** from covered property or to repair, restore or replace that property; or

(b) tear out and replace any part of the building or other property as needed to gain access to the **fungus**; or

(3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence or level of **fungus**, whether performed prior to, during or after removal, repair, restoration or replacement of covered property.

All other policy provisions apply.

Part of the damages Plaintiffs are claiming to the decking beneath the dwelling roof and to the sheathing beneath a basketball court resulted from rot or fungus. These conditions are not insured under the policy at issue.

11.   **Bona Fide/Legitimate Dispute.** A bona fide/legitimate dispute exists precluding Plaintiffs' recovery of damages under extra-contractual theories including for violations of the Texas Insurance Code or any other statutory or common law authority.

12.    **Cap on Punitive Damages.** TEX. CIV. PRAC. AND REM. CODE §41.001, *et seq.,* applies and punitive damages awarded, if any, are subject to the statutory limit set forth therein, other applicable statutory authority, and the common law. Further, unless Plaintiffs prove Defendant's liability for punitive damages, and the amount of punitive damages, if any, by clear and convincing evidence, any award of punitive damages would violate Defendant's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by Section 19 of Article 1 of the Texas Constitution.

### III.
### SPECIAL EXCEPTIONS

13.    **Breach and Anticipatory Breach of Contract** [Pet., ¶¶ 27-37]. State Farm specially excepts to Plaintiffs' breach of contract claim because Plaintiffs fail to provide fair notice of the alleged breach, anticipatory breach, or resulting damages. Plaintiffs cite several provisions from the Texas Insurance Code, but no provisions of the contract allegedly breached. Plaintiffs also fail to specify what damages, if any, remain following State Farm's timely payment of the appraisal award.  Thus, Plaintiffs should be required to amend their Petition to state with particularity: (1) facts supporting the alleged loss; (2) facts demonstrating the portion of the loss covered by the contract in question: (3) facts regarding the acts or omissions by State Farm which allegedly amounted to a breach or anticipatory breach of contract; and (4) the damages sought by Plaintiffs for the alleged breach or anticipatory breach that remain following payment of the appraisal award.[1] Should Plaintiffs fail to amend, this claim should be dismissed.[2]

---

[1]    *Subia v. Texas Dept of Human Serv.,* 750 S.W.2d 827, 829 (Tex. App. — El Paso 1988, no writ) (trial court can order the Plaintiffs to specifically plead a cause of action which was originally pleaded in general terms).

[2]    *Baca v. Sanchez*, 172 S.W.3d 93, 97 (Tex. App.—El Paso 2005, no pet.) (holding that a claim may be dismissed if the party refuses to amend to state a cause of action); *Mowbray v. Avery*, 76

14.   **Breach of the Duty of Good Faith and Fair Dealing** [Pet., ¶¶ 38-39].

State Farm specially excepts to Plaintiffs' vague claim for breach of the duty of good

faith and fair dealing because Plaintiffs fail to allege any facts to explain how State Farm

mishandled Plaintiffs' insurance claim or what damages Plaintiffs have sustained. For

example, Plaintiffs confusingly cite a Texas Supreme Court decision that has nothing to

do with the facts of this case, and then recite boilerplate language that is not identifiable

to any facts in this case. Accordingly, Plaintiffs should be required to amend their

Petition to state with particularity: (1) what conduct by State Farm violated its duty of

good faith and fair dealing to Plaintiffs; and (2) what damages resulting therefrom

remain following State Farm's payment of the appraisal award.[3] Should Plaintiffs fail to

amend, this claim should be dismissed.[4]

15.   **DTPA Violations** [Pet., ¶¶ 40-42]. State Farm specially excepts to

Plaintiffs' vague and generic allegations that State Farm violated the DTPA, because

Plaintiffs merely cite statutory provisions without any facts to support them. Plaintiffs

allege that State Farm made misrepresentations concerning "price reductions" or "the

authority of a salesman . . . to negotiation the final terms of a consumer transaction,"

when these allegations are plainly irrelevant to the case at hand. Plaintiffs should be

ordered to amend their Petition to state with particularity what facts, if any, support

alleged DTPA violations, failing which, this claim should be dismissed.[5]

---

S.W.3d 663, 677-678 (Tex. App.—Corpus Christi 2002) (same); *Wayne Duddlesten, Inc. v. Highland Ins. Co.*, 110 S.W.3d 85, 96-97 (Tex. App.—Houston [1st Dist.] 2003) (same).

[3]   *Subia,* 750 S.W.2d 827, 829.

[4]   *Sanchez*, 172 S.W.3d 93, 97; *Avery*, 76 S.W.3d at 677-678; *Duddlesten*, 110 S.W.3d 85, 96-97.

[5]   *Subia,* 750 S.W.2d at 829 (allegations solely tracking statutory grounds did not give defendant fair notice of facts and circumstances); *see also Sanchez*, 172 S.W.3d at 97; *Avery*, 76 S.W.3d at 677-678; *Duddlesten*, 110 S.W.3d at 96-97.

16.    **Knowing and/or Intentional Conduct** [Pet., ¶ 40]. State Farm specially excepts to Plaintiffs' generic allegation that State Farm "knowingly" or "intentionally" violated the DTPA or the Texas Insurance Code, as Plaintiffs fail to provide any facts to support their allegation that State Farm acted wrongfully with knowledge or intention to cause harm. Nor have Plaintiffs identified the statutory violation at issue with any particularity. Pleading facts is necessary to inform State Farm of what it is called upon to answer and to enable it to prepare defenses. Accordingly, Plaintiffs should amend their pleadings to set forth facts in support of their claim for knowing and/or intentional conduct, as well as any damage related thereto including, without limitation, any alleged mental anguish or emotional distress.

17.    **Prompt Payment Violations** [Pet., ¶¶ 43-46]. State Farm specially excepts to Plaintiffs' generic recitation of nearly every section of the Prompt Payment of Claims Act, codified in TEX. INS. CODE 542.055, *et seq.*, because Plaintiffs fail to identify any facts to support the alleged statutory violations. Merely reciting statutory provisions does not provide State Farm fair notice of what it will be called on to defend at trial.[6] Further, Plaintiffs fail to explain how a prompt payment violation occurred following State Farm's timely payment of an appraisal award. Plaintiffs should be required to amend their Petition to specify facts to support: (1) which statutory provisions were violated; and (2) how such violations could exist following timely payment of an appraisal award, failing which, this claim should be dismissed.[7]

18.    **Chapter 541 Violations** [Pet., ¶¶ 47-50]. State Farm specially excepts to Plaintiffs' vague and generic allegations that State Farm violated Chapter 541 of the Texas Insurance Code, because Plaintiffs merely cite statutory provisions without any

---

[6]    *Subia,* 750 S.W.2d at 829.

[7]    *Sanchez*, 172 S.W.3d at 97; *Avery*, 76 S.W.3d at 677-678; *Duddlesten*, 110 S.W.3d at 96-97.

facts to support them.[8] Many of Plaintiffs' allegations are plainly irrelevant, such as Plaintiffs' contention that State Farm required Plaintiffs to produce "federal income tax returns for examination or investigation" or engaged in "boycott, coercion, and intimidation in the business of insurance," among other unapplicable allegations. Additionally, Plaintiffs fail to specify what damages, if any, remain following State Farm's timely payment of the appraisal award.   Plaintiffs should be required to amend their Petition to state with particularity: (1) which statutory provisions were allegedly violated; and (2) how such violations caused Plaintiffs to sustain any damages following State Farm's payment of the appraisal award, failing which, this claim should be dismissed.[9]

19.    **Fraud** [Pet., ¶¶ 51-53]. State Farm specially excepts to Plaintiffs' fraud claim because Plaintiffs fail to allege facts to support the elements of fraud. Specifically, Plaintiffs fail to allege: (1) what false representation State Farm made; (2) how Plaintiffs relied on such misrepresentation(s) and (3) how Plaintiffs were induced to act as the result of any such misrepresentations. Therefore, Plaintiffs should amend their Petition to plead their fraud claim with particularity, failing which, this claim should be dismissed.

20.    **Conspiracy to Commit Illegal Acts** [Pet., ¶¶ 54-56]. State Farm specially excepts to Plaintiffs' conspiracy claim because Plaintiffs have not stated a valid claim under Texas law. Plaintiffs claim that State Farm conspired with "its agents," but it is well settled that an agent cannot conspire with its principal since they are of one entity and a conspiracy requires more than two persons or entities.[10] Accordingly, Plaintiffs

---

[8]      *Subia,* 750 S.W.2d at 829.

[9]      *Sanchez*, 172 S.W.3d at 97; *Avery*, 76 S.W.3d at 677-678; *Duddlesten*, 110 S.W.3d at 96-97.

[10]     *Bradford v. Vento*, 48 S.W.3d 749, 761 (Tex. 2001).

should be required to amend this claim to state a valid cause of action under Texas law, failing which, this claim should be dismissed.[11]

**PRAYER**

Defendant State Farm Lloyds prays that Plaintiffs take nothing by their claims, that the Court sustain State Farm's special exceptions to Plaintiffs' Petition, and that State Farm recover its costs, fees, and expenses, and such other further relief to which State Farm may show itself to be justly entitled to, in law and in equity.

Respectfully submitted,

**NISTICO, CROUCH & KESSLER, P.C.**

By:   */s/ M. Micah Kessler*

M. Micah Kessler
State Bar No. 00796878
Avniel J. Adler
State Bar No. 24071933
1900 West Loop South, Suite 800
Houston, Texas 77027
Telephone: (713) 781-2889
Telecopier: (713) 781-7222
Email: mkessler@nck-law.com
Email: aadler@nck-law.com

**COUNSEL FOR DEFENDANT**

---

[11]   *Sanchez*, 172 S.W.3d at 97; *Avery*, 76 S.W.3d at 677-678; *Duddlesten*, 110 S.W.3d at 96-97.

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing instrument was served on all parties through counsel of record in compliance with Rules 21 and 21a of the Texas Rules of Civil Procedure on April 5, 2019, in the manner(s) prescribed below:

Eric Dick
Dick Law Firm, PLLC
3701 Brookwoods Drive
Houston, Texas 77092
**VIA EFILE**

_/s/ M. Micah Kessler_
M. Micah Kessler

Print this page

# Case # 19-02-25404 - CHRISTOPHER and JENNIFER CLAFFEY vs. STATE FARM LLOYDS (McCaig, Albert M., Jr.)

## Case Information

| | |
|---|---|
| Location | Waller County - 506th District Court |
| Date Filed | 4/5/2019 1:11 PM |
| Case Number | 19-02-25404 |
| Case Description | CHRISTOPHER and JENNIFER CLAFFEY vs. STATE FARM LLOYDS |
| Assigned to Judge | McCaig, Albert M., Jr. |
| Attorney | M Kessler |
| Firm Name | Nistico Crouch & Kessler PC |
| Filed By | Tyffeni Nguyen |
| Filer Type | Not Applicable |

## Fees

| | |
|---|---|
| Convenience Fee | $0.00 |
| Total Court Case Fees | $0.00 |
| Total Court Party Fees | $0.00 |
| Total Court Filing Fees | $0.00 |
| Total Court Service Fees | $0.00 |
| Total Filing & Service Fees | $0.00 |
| Total Provider Service Fees | $0.00 |
| Total Provider Tax Fees | $0.00 |
| Total Taxes (for non-court fees) | $0.00 |
| Grand Total | $0.00 |

## Payment

| | |
|---|---|
| Account Name | AMEX 6004 |
| Transaction Amount | $0.00 |
| Transaction Response | |
| Transaction ID | 48853347 |
| Order # | |

---

## Answer/Response

| | |
|---|---|
| Filing Type | EFileAndServe |
| Filing Code | Answer/Response |
| Filing Description | Defendant's Original Answer |

| | | |
|---|---|---|
| Reference Number | Claffey, Christopher [REFILED] | |
| Comments | | |
| Status | Submitting | |

**Fees**

| | |
|---|---|
| Court Fee | $0.00 |
| Service Fee | $0.00 |

**Documents**

| | | |
|---|---|---|
| *Lead Document* | Claffey, Christopher [REFILED] - Defendant Original Answer.pdf | [Original] |

**eService Details**

| Name/Email | Firm | Service Method | Status | Served | Date/Time Opened |
|---|---|---|---|---|---|
| Eric Dick eric@dicklawfirm.com | | EServe | Not Sent | No | Not Opened |
| Avniel J Adler aadler@nck-law.com | | EServe | Not Sent | No | Not Opened |
| Micah Kessler mkessler@nck-law.com | Nistico, Crouch & Kessler, PC | EServe | Not Sent | No | Not Opened |
| Paul H Nguyen pnguyen@nck-law.com | NCK, PC | EServe | Not Sent | No | Not Opened |
| Tyffeni Nguyen tnguyen@nck-law.com | Nistico, Crouch & Kessler | EServe | Not Sent | No | Not Opened |